[This case was tried in May, 1801, upon a motion to discharge the defendant from arrest upon common bail. The court here intimated that he should be considered a citizen of Pennsylvania, but declined to discharge him, upon the ground that it was not proper to try the main point at issue in this collateral proceeding. Case No. 7,909.]

For plaintiffs, it was contended, by Moylan, that the defendant could only be regarded as an inhabitant, not as a citizen, of Pennsylvania; that he had represented and proved himself to be a citizen of Maryland, in August, 1799, or he could not have enjoyed the benefit of the act of that state; and that he had not, upon the most liberal calculation of time, resided in Pennsylvania long enough to acquire the rights of permanent citizenship, upon the principle of the constitution. 1 Story's Laws, p. 57, § 11 [1 Stat. 78]; Const. Pa. art. 3, § 1.

For the defendant, it was contended, by Ingersoll and Dallas, that a citizen of one state, was, constitutionally, entitled to be a citizen of every state; that the acts of congress prescribe a mode for naturalizing aliens, but none for communicating the municipal rights of citizenship, to a citizen removing from one state to another; that as to the naturalization of aliens, Pennsylvania leaves the subject to the act of con-

gress; and for the exercise and enjoyment of every right of citizenship, her constitution only stipulates, that the party shall be a citizen, shall have resided for a specified time, and shall have paid taxes; that the three requisites must be complied with, in the case of a native, as well as of an adopted, citizen, for the purposes contemplated; that, being a citizen, absence from the state does not disfranchise, except as to the right of electing and being elected, which depends on residence, as well as citizenship; that a citizen of Massachusetts coming into Pennsylvania, with a view to settle, acquiring real estate, and paying taxes, is a citizen of Pennsylvania, to every purpose, but that, of electing, or being elected, within the respective periods prescribed by the constitution; and that the laws of Maryland communicate, instanter, the rights of municipal citizenship, to a citizen going thither, from another state, without impairing the permanent domiciliated citizenship, to which he is entitled in his own state. Const. U. S. art. 4, § 1; U. S. v. Villato [Case No. 16,622]; Const. Pa. art. 1, §§ 3, 8; Id art. 2, §§ 4, 8; Id. art. 3, § 1; Id. art. 6, § 1; Id. art. 9, §§ 20, 21; 4 State Laws, p. 332, § 1; [Barnet's Case] 1 Dall. [1 U. S.] 152; Taylor v. Knox, Id. 158, 241; Laws Md. July, 1779, c. 6; Laws Md. Nov., 1789, c. 24; Laws Md. Nov., 1792, c. 14; Laws Md. Nov., 1793, c. 26.

THE COURT were clearly of opinion, that the defendant was entitled to be considered as a citizen of Pennsylvania; and the jury found a verdict accordingly. Verdict for defendant.

---

## Case No. 7,909.

### KNOX et al. v. GREENLEAF.

#### [Wall. Sr. 108.] [1]

Circuit Court. D. Pennsylvania. May 23. 1801.

BAIL—CIVIL CASE—COMMON BAIL—CO-CITIZENS—DISCHARGE IN BANKRUPTCY—CONTINGENT DEBT—DOUBTS UPON MOTION TO DISCHARGE — PLEA IN ABATEMENT.

1. Upon a motion to discharge upon common bail, the court will not decide whether the plaintiff and defendant be co-citizens, if the question be attended with doubts of law or fact, but will put the defendant to his plea in abatement: neither will they decide whether or not a discharge under the bankrupt law of Maryland will extinguish a debt contracted in Philadelphia; nor whether a future or contingent debt may be proved under an insolvency in Pennsylvania; but will leave the defendant to plead the matter specially.

[Cited in Parkhurst v. Kinsman, Case No. 10,761.]

[2. Cited in Crumbaugh v. Kugler, 2 Ohio St. 378, to the point that a bankrupt cannot make a gift of his property without a careful regard to his creditors' rights; and such gift is never upheld unless sufficient property is retained to pay all of the donor's debts.]

This was a motion to discharge the defendant [James Greenleaf] on common bail,

---

[1] This action was brought against Mr. Greenleaf, as indorser of notes issued by Morris and Nicholson, which he had pledged as security for his own notes, given to the plaintiff. His own notes were due before he was discharged, under the insolvent act; but the notes, of which he was indorser, became due afterwards. This afforded matter for argument, but did not appear to enter into the decision of the court. The plaintiff's counsel cited 4 Term R. 714.

---

[1] [Reported by John B. Wallace, Esq.]

on the following case: The defendant had been arrested at the suit of the plaintiffs [Knox & Co.], on the 29th of January, 1801, as a citizen of Maryland, to recover from him, as endorser, the amount of an inlaid bill drawn in May, 1796, by Nicholson, of Philadelphia, on Morris, of the same place, in favor of the defendant, and by him endorsed, after acceptance, to the plaintiffs, citizens of Pennsylvania. The bill was payable in three years, and falling due in May, 1799, was protested for non-payment. The drawer, acceptor, and indorsee, were citizens of Philadelphia; but the defendant, at the time of negotiating the bill, in May, 1796, was a native and citizen of Massachusetts. On the affidavit of the defendant, it appeared that in the autumn of 1796, he became a taxable householder and inhabitant of the city of Philadelphia, having previously purchased a house for the purpose, furnished the same, and removed his family thereto, consisting of counting-house clerks, servants, &c: that since then, except when actually journeying, his absences from the state of Pennsylvania had not altogether exceeded five months: that in the month of March, 1798, he was discharged from imprisonment for his debts, under the insolvent law of Pennsylvania; since which period, he had passed but a few weeks out of Pennsylvania: that in August, 1798, while on a journey in Maryland, he was there arrested for a debt contracted previously to his discharge in Pennsylvania, and was forced to give special bail to the action: that to avoid imprisonment there, he applied to the legislature of Maryland for relief, and was included in an act passed for that purpose, in the winter following: that after the arrest in Maryland, he returned to Pennsylvania, and remained there until the month of December, 1798, when he went to Maryland to attend the legislature; and that since the 5th day of February, 1800, he had not been for a moment out of the state of Pennsylvania: that from May, in that year (1800). he had resided with his family as a taxable householder in Northampton county, and as such, had regularly paid taxes and assessments of various kinds, in common with other citizens of the state. By the proper certificate it appeared, that on the 16th March, 1798, the defendant applied to the supreme court of Pennsylvania. stating his imprisonment on execution for debt, his insolvency, &c.; and that on the 30th of the same month, he was discharged by the court from imprisonment of his person, on account of the debts due to his creditors who had notice of the application, which notice the plaintiff received. And by the proper exemplification, it appeared, that on the 10th January, 1799, the legislature of Maryland passed an act, whereby (reciting an application from James Greenleaf, of Prince George county, in the same state. and sundry other persons, stating their misfortunes,

&c.,) it was enacted, that each of the debtors might apply to the chancellor in writing, and on offering to deliver up all his property for the use of his creditors, together with a list, &c., the chancellor should proceed, &c. The act provides, however, that no person should be entitled to the benefit of it, unless the chancellor should be satisfied, by competent testimony, that "he, is, and at the time of passing the act, was a citizen of the United States and of that state.". It appeared that the defendant, having complied with the terms of the act, obtained his certificate and discharge on the 30th August, 1799. No special notice was given to the plaintiffs of the proceeding under the discharge in Maryland, though public notice was inserted in the Maryland gazettes.

On this state of the case, Ingersoll and Dallas made four points, on each of which they contended that the defendant was entitled to be discharged on a common appearance.

1. They urged that upon the affidavit and evidence, Mr. Greenleaf, at the time of the action brought, to wit, on the 29th January, 1801, was a citizen of Pennsylvania, and being a co-citizen of the plaintiffs, this court had not jurisdiction. They said, that neither by the constitution of the United States, nor by the constitutions of the different states, (certainly not of Pennsylvania,) was it defined how a native and citizen of one state (of Massachusetts, for instance,) should become the citizen of another state. Each constitution speaks of citizenship as a presupposed condition in the state: thus, by the 4th article and 2d section of the constitution of the United States, it is provided, that "the citizens of each state, shall be entitled to all privileges and immunities of citizens in the several states." By the 1st article of the constitution of Pennsylvania, section 3, it is said: "No person shall be a representative, unless he has been a citizen and inhabitant of the state three years." So for a senator, four years. The governor shall have been a citizen and inhabitant seven years. So, by section 8, art. 3, no person shall be appointed to an office, unless a citizen, &c. So in various other parts of the constitution, "citizens" are spoken of; but no article of the constitution, nor act of the legislature, prescribes the requisite qualifications to the character of a citizen. The constitution and the law, in some instances, prescribes a certain residence to entitle persons to vote, or elect, or be elected. Thus by 4 State Laws, p. 332, § 1, "No person shall vote but citizens of the state who are twenty-one years of age and resident." &c. But these restrictions have no relation to the citizen; they abridge or regulate his conduct with reference to particular subjects of political right; but who is, or who is not a citizen, is to be deduced from the law of the land. Natives are citizens of the state where born; so are naturalized foreigners in the state where adopted. But is

it necessary that a native or naturalized citizen of one state, coming into another state, should be naturalized in order to become a citizen of that other state? Certainly not. They contended that a citizen of any of the United States, removing into another with a view to a fixed residence, and being domiciliated there, was ipso facto, a citizen of that state to every purpose, subject only to the same restrictions as to residence and other qualifications to elect or be elected, as were prescribed to the citizens of the same state. Inhabiting in a state made a citizen of the state. This, they argued, was the received notion in Pennsylvania, in their construction of the acts relative to domestic and foreign attachments; it had always been held that one who had come into the state and taken up a fixed residence, could not be proceeded against by foreign attachment. [Barnet's Case] 1 Dall. [1 U. S.] 152; [Taylor v. Knox] Id. 158; [Penman v. Wayne] Id. 241–243, 348; [Millar v. Hall] Id. 229.

Ingersoll at another time, cited the following authorities: 3 Bl. Comm. 362; 2 Inst. 702; 2 Laws U. S. p. 92, § 1; 2 State Laws, p. 394, § 1; Prov. Laws, 45.

2d. They made it a point that at the time of drawing and endorsing the bill in question, to wit, in May, 1796, the parties being all citizens of Pennsylvania; then, as the defendant, the payee of the bill, could not have prosecuted the acceptor or drawer in this court, no indorsee of the defendant can sue him, though a citizen of another state when the action brought. On this point they cited the act of congress, passed September 24, 1789, § 11 [1 Stat. 78].

3d. That the defendant's discharge on the 16th March, 1798, under the insolvent law of Pennsylvania, with personal notice to the plaintiffs, and all the parties being inhabitants of the same place, the debt too being contracted there, must exempt his person from imprisonment in case of the final recovery of the debt, and of course, that common bail only could be demanded.

4th. They contended that the defendant, considered either as a resident pro tempore, or as a citizen of Maryland, having by virtue of a law of that state passed on the 10th January, 1799, and a certificate under it of August, 1799, been discharged from all debts due antecedent to the date of his deed of trust, under that act, for the benefit of his creditors, is, by that law and certificate, discharged from the debt in question, except only as to property acquired by gift, &c. after the assignment. This, they stated, was the decided law, as established in the supreme court of Pennsylvania, and so held after solemn argument and great consideration, in the case of Miller v. Hall [1 Dall. (1 U. S.) 229].

Moylan, contra, said on the first point, that he was not prepared to discuss the question of citizenship; he was however disposed to acquiesce in the principles advanced by the opposite counsel that a citizen of one state became a citizen of another by a removal and inhabitancy. It was enough for him on this motion, to show a probable ground that the defendant was a citizen of Maryland at the time of the suit instituted, and not a co-citizen of the plaintiffs in Pennsylvania. The defendant's own law and certificate, obtained in Maryland in January and August, 1799, proved him a citizen of that state at that time; for in the act there is an express proviso, that no person shall have the benefit of it, unless he makes competent proof to the chancellor, that "he is, and, at the time of passing the act, was a citizen of the United States and of that state;" and he denied that since that time, the defendant had made out clear proof of his having become a citizen of Pennsylvania.

On the second point, he observed, that at the drawing of the bill in May, 1796, the payee, the present defendant, was not a citizen of Pennsylvania, but of Massachusetts. That as indorser, he did not become liable to pay until after the protest in May, 1799, and then, by his own showing, he was a citizen of Maryland; so that the case was out of the act of congress.

On the third ground, he argued, that the debt in question was not due at the time of the liberation and certificate of the defendant, under the insolvent act of Pennsylvania, viz. in March, 1798; and that a contingent debt, as this was, could not be proved under the assignment: the discharge was in May, 1798, the liability to pay not till May, 1799. 4 Term R. 714.

On the fourth point, as to the operation of the Maryland discharge, he admitted the law was settled in Pennsylvania as it had been laid down by the counsel against him; but insisted that the decision was erroneous, and ought not to be adopted but on more solemn argument on a proper plea.

GRIFFITH, Circuit Judge (after stating the case ut supra). The first two grounds on which the motion goes, rest on the assumption that the defendant is not within the jurisdiction of the court. If we discharge him on common bail for this, it must be on the precise question of jurisdiction; we must say that it appears to us he was a citizen of Pennsylvania on the 29th January, 1801, or, that this is a case within the 11th section of the act of congress passed the 24th September, 1789, which enacts, "that no district or circuit court shall have cognizance of any suit to recover the contents of any promissory note, or other chose in action, in favour of an assignee, unless a suit might have been prosecuted in such court to recover the said contents, if no assignment had been made, except in cases of foreign bills of exchange."

Prima facie, the plaintiffs' right to bail must be admitted; no pretence of actual satisfaction is set up, and they hold the securi-

ties which are evidence of a subsisting debt. An application for a discharge on the head of jurisdiction, presents no equity, no merits; to the purpose of this motion it admits the demand; but says, this court ought not to try it, or enforce payment. If we discharge the defendant on a common appearance, we do in effect decide the main question between the parties as to the remedy in this court, against the plaintiffs. Possibly, a plaintiff might be held to bail in a case so plainly without the jurisdiction of the court, that we would decide on it in this collateral way, and free him from arrest upon the presumption that his plea in abatement, which would follow, must infallibly prevail. I say such a case might happen; as for instance, if it should be sworn that the plaintiff and defendant were native citizens, and had always lived together in the city of Philadelphia: on such proof uncontradicted, the court might direct an exoneretur on the ground of a vexatious and oppressive arrest; they would not permit a plaintiff, on such a pretence, to imprison the defendant until a formal trial of the plea. But where the plaintiff has color for his suit in this court; where he controverts the very fact on which the defendant founds his claim to exemption; where in his process, and on the motion, he insists that the defendant is not a citizen of the same state; in such circumstances, it would be too much for the court to decide upon its jurisdiction in this summary way. It would be injurious to both parties, for us to pretend to try a question of this kind, depending partly on fact, and partly on law, on such an application. We must forestall the question. If we mistake by deciding against the plaintiff, he may afterwards, indeed, get a verdict on the plea in abatement; but then he has lost his security, if the defendant's person should not be within the reach of our process. On the other hand, to decide against the defendant, would be to subject him to a premature decision; and generally, this practice would be introductive of a double trial: first, on the motion for common bail, and then, on the plea. The point to be considered, then, on this head, is, whether the proof of co-citizenship is so clearly established, as to justify us in deciding in favor of it on motion.

Mr. Greenleaf's counsel have argued, and very forcibly, that his inhabitancy in Pennsylvania from the fall of 1796, and settled residence there, payment of taxes, &c. will constitute him a citizen of that state, and so a co-citizen with the plaintiffs. Their position is, that as neither the constitution of the United States, nor that of Pennsylvania, nor the laws of either, have defined the terms on which a citizen of one state may become the citizen of another, the only criterion is settled inhabitancy. Whenever a citizen of one state goes into another, and makes that other his home, or where he establishes his domicil, he is there, for the

time being, a citizen of that state to which he goes, within the meaning of the constitution of the United States (article 3, § 2), which gives jurisdiction to this court between citizens of different states. This is certainly a constitutional question, and undecided; and though at present, I do not see what other principle can be adopted, yet I am unwilling to act upon it, until brought before us in a more solemn way, by plea to the jurisdiction.

It might be said, the plaintiffs by prosecuting him as a citizen of Maryland, admit the principle that inhabitancy gives a title to citizenship; and it is indeed true that he was resident in Maryland, only part of the months of August and December, 1798, and in January and August, 1799, about his bankruptcy. No admission, however, of the plaintiffs, on a question of law, can have any weight. If he is a citizen of Massachusetts only, we must say so; and should it be so determined, I do not see but that the plaintiffs' action may be sustained: their describing the defendant as a citizen of Maryland, may be rejected, it being sufficient to maintain the action, that he is a citizen of a state other than that where the plaintiffs are citizens.

So much on the general question, as argued by the defendant's counsel. But beside this, the plaintiffs meet the defendant on his own principles, and contend that he was actually a citizen of Maryland, in August, 1799, as appears by his discharge under the bankrupt law there, which could not be without proving himself to the chancellor a citizen of that state: that he must be taken, upon his own showing, to have become a citizen there in 1799, is very clear: whether he is yet so, or whether he belongs to Massachusetts, or by his former and subsequent residence in Pennsylvania, was a citizen of that state at his arrest, we cannot now determine. It is a question, to say no more of it, attended with some doubts both of law and fact, and therefore not fit to be decided on this motion.

The defendant's case has been put on the 11th sec. of the act of congress of the 24th September, 1789, and it is argued, that at the original drawing of the bill, and before the assignment, no action could have been maintained in the federal court, by Greenleaf against the drawer or acceptor, he and they being citizens of Pennsylvania; and therefore it is inferred that the endorsees cannot maintain an action against the endorser, though of a different state at the time of the commencement of their suit. But it is evident that this involves the same general question, whether Greenleaf was a citizen of Pennsylvania at all. If he was not, then the argument from the act of congress wants the fact to bear it out. Again, it is evident, that at the drawing of the bill in May, 1796, the defendant was not a citizen of Pennsylvania; his residence in Philadelphia did not

commence until the fall of that year. But again, at what time is the relative citizenship of the parties to the bill to decide the jurisdiction? Certainly when the bill becomes payable; when the drawer, or acceptor, or endorser may be sued. Now the defendant could not sue the acceptor or drawer in this case, until May, 1799. And where, upon his own showing, was he a citizen at that time? Most probably in Maryland. On this ground, then, the question is not so clear as to justify a decision against our cognizance of the cause, upon motion.

In addition to these reasons I would observe, that an exception to the jurisdiction, in its nature, is not entitled to particular favour; and unless very clear indeed, there seems to be a propriety in putting the party to his plea, if he would oust the court of its cognizance of the cause.

But another general ground is taken. It is urged that the discharge under the bankrupt law of Maryland, in August, 1799; or that under the insolvent law of Pennsylvania, in March, 1798, should either of them exempt his person from arrest for antecedent debts.

1. As to the Maryland bankruptcy, we are called upon, in this way, to say that the debt of a citizen of Pennsylvania, contracted at Philadelphia with the defendant, is extinguished by a special act of the Maryland legislature, discharging the defendant on a sudden and summary process from his debts, without personal notice to the creditor. I am aware of the state decisions in Pennsylvania on this point, and of their high authority, and of the strong reasons in their favour. I have for myself, however, formed no decisive opinion. None has been given, that I know of, in any of the federal courts which can serve as a precedent. The plaintiffs insist to have the question determined on plea, and that it may not be hurried to a premature decision. I do not pretend at this time to deliver any opinion: I really have none, and it would be injustice done to both parties, were we thus to anticipate a very important and serious subject of consideration, on the right solution of which, much property and many people are deeply concerned. The defendant must therefore plead this matter.

2nd. As to the certificate under the Pennsylvania insolvent law, in March, 1798, I should have no hesitation to discharge the defendant upon common bail on this ground, had the debt in question been due at the time of the assignment of his effects, and liberation from imprisonment. The certificate is very special, and discharges the defendant from imprisonment "for his debts then due;" whereas the debt in question did not arise nor become due, until fifteen months after. The endorser was not liable, but in the events of due diligence by the plaintiffs, and non-payment by the acceptor of the bill. In answer to this, it has been insisted, that under the act of February 14th, 1729-30, on which the discharge is grounded, contingent debts are included, and that they might be proved under the assignment. This brings up a new and important question under that law: the bar allow it has received no decision: upon looking carefully through the act, I see enough in it to render it questionable, whether this is a debt affected by that certificate.

Upon the whole, I can see no clear and satisfactory ground on which to liberate the bail. There is the stronger reason for refusing the motion (was I any way doubtful) as his honor the chief judge, from circumstances, cannot act with us in this case; and Judge BASSET is absent, having had but a slight conversation with me on the subject after hearing the argument, but authorizing me to say, that under all the circumstances, he was not inclined to go so far in an opinion on any of the points, as to discharge the defendant from the arrest.

As this was represented to be a question of considerable importance to the defendant, I have considered it as attentively as the hurry of the court and other business would permit, and for the satisfaction of the parties, have thought it proper to assign my reasons for directing that the defendant take nothing by his motion.

TILGHMAN, Chief Judge, being related to the defendant, declined sitting upon the argument.

[The case was afterwards tried by the circuit court upon a plea in abatement by the defendant, Greenleaf. The plea set up the claim of the defendant to be considered a citizen of Pennsylvania. The court so instructed the jury, and a verdict was found accordingly. Case No. 7,908.]