# BURGDORF
*v.*
# THE DISTRICT OF COLUMBIA.

---

TAXES; COSTS OF ADVERTISING DELINQUENT PROPERTY; PENAL-
TIES FOR NON-PAYMENT OF TAXES; EQUITY; SUITS TO
ENJOIN COLLECTION OF TAXES.

1. A charge by the District Commissioners of $1.20 for advertising for sale a lot or piece of property upon which taxes are overdue, as allowed by the act of Congress of August 7, 1894, is no ground for restraining the sale of the property by the District of Columbia, or for impeaching the validity of a sale of it for non-payment of taxes, although the amount actually paid by them for such advertising may have been less than that sum. There is no power in the courts to interfere with a charge so fixed by Congress.

2. The statutory imposition of penalties for non-payment of taxes in this District as they become due and in arrear, as prescribed by sec. 4 of the act of Congress of March 3, 1877, read in connection with sec. 18 of of the same act, was not limited to the years 1877 and 1878, but sec. 4 continues in force and constitutes a part of the permanent tax system of this District.

3. Under the tax law of this District, from the time that each instalment of taxes becomes due and delinquent, it becomes subject to the addition of the monthly penalties until payment is made of such instalment, together with the penalties added, and the costs allowed by the statute, and the whole together are enforceable against and constitute a lien upon the property; *construing* secs. 4 and 18 of the act of Congress of March 3, 1877, and the act of Congress of March 19, 1890.

4. A suit in equity will not lie to restrain by injunction proceedings to collect taxes with accrued penalties and costs added, upon the sole ground that such taxes or penalties and costs are illegal. To maintain such a suit special circumstances must be shown, such as irreparable injury, multiplicity of suits, or cloud on the title of the complainant.

5. Sec. 3224, R. S. U. S., providing that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court, is in force in this District, and applies to the assessment and collection of general taxes on real estate.

No. 480. Submitted November 4, 1895. Decided January 6, 1896.

HEARING on an appeal by the complainant from a decree sustaining a demurrer to and dismissing a bill against the District of Columbia and Commissioners of the District of Columbia to enjoin the sale of certain real estate for non-payment of arrears of taxes with penalties and costs added. *Affirmed.*

The COURT in its opinion stated the case as follows :

The bill was filed by the appellant, Augustus Burgdorf, against the District of Columbia and its Commissioners to obtain an injunction to enjoin them from selling certain pieces or parcels of real property, owned by the plaintiff, for the payment of taxes in arrear and delinquent, with certain penalties and costs added. The taxes were assessed and became due for the fiscal year ending June 30, 1894.

There is no charge or pretence that the taxes were not

duly and regularly assessed, or that they are not still due and owing from the plaintiff. These facts are fully admitted by the bill. Nor is it denied that the plaintiff is delinquent in the payment of the taxes ; though he alleges that after he became delinquent and his property was advertised for sale, he offered and tendered to the collector of taxes the several amounts assessed against the respective parcels of land mentioned ; that is to say, the original amounts of the assessments, without the penalties and costs added. He also avers that he is ready and willing to pay the taxes, with all proper costs and expenses which the court may direct him to pay.

The gravamen of the bill appears to be, that the Commissioners have had printed and published, as authorized and directed by an act of Congress, a book or pamphlet containing the names of delinquent tax-payers, with a list of property to be sold for taxes, including the plaintiff's name, and his property upon which taxes were due and in arrears ; and having thus advertised the plaintiff's property for sale, so scheduled as delinquent, the Commissioners have added as the cost or expense of the printed schedule and advertisement, the sum of $1.20 for each piece or parcel of property so advertised. This the bill charges to be without lawful authority, or at least as excessive, and therefore without warrant of law. The bill also charges that there has been a large accumulation of penalties added to the amounts of the taxes as originally assessed, and which penalties the Commissioners claim the right to enforce, but which the plaintiff alleges to have been added and claimed without authority of law.

It is also alleged, that if the property assessed be allowed to be sold for these unlawful demands, multiplicity of litigation will be generated, and a cloud thrown upon the purchaser's title.

The bill prays that sale of the property may be restrained, and that the demand of penalties for delay, and costs claimed for advertising, be declared void.

The defendants demurred to the bill, and the court below (Mr. Justice Cox) refused the injunction, and dismissed the bill.

*Messrs. A. A.* and *T. W. Birney* for the appellant :

1. The case presented by this bill is within the cognizance of a court of equity, and such court has full jurisdiction to entertain the bill, and decree an injunction upon equitable conditions. *Allen* v. *Railroad Co.,* 114 U. S. 311 ; *Osborne* v. *Bank,* 9 Wheat. 739 ; *Cummings* v. *Bank,* 101 U. S. 157 ; *Hannewinkle* v. *Georgetown,* 15 Wall. 549 ; *Ex parte Tyler,* 149 U. S. 188. A tax, if illegal, and declared to be a lien on property, creates such a cloud upon the title as to warrant an injunction. *Schofield* v. *Lansing,* 17 Mich. 437.

2. The section of the act of March 3, 1877, providing for penalties, upon which defendants base their claim, cannot be applied to any year after the fiscal year ending June 30, 1878. Applying the settled doctrine that statutes are to be construed strictly when they provide for penalties or forfeitures, it would seem to be clear that there is no statute upon which the Commissioners can justify their charge.

The right of a citizen to his property requires that statutes making assessments should be strictly construed. *White* v. *Saginaw,* 67 Mich. 40 ; *Beatty* v. *Knowles,* 4 Pet. (U. S.) 152 ; *Sharp* v. *Speir,* 4 Hill (N. Y.) 76. Penalties are never extended by implication. *Elliott* v. *Railroad,* 99 U. S. 573 ; Cooley on Taxation, ch. 19, p. 202, 203.

But if the statute was extended by section 18 to all subsequent years, yet there is no right to assess penalties after the first day of June in each year.

3. The cost to the District of Columbia for advertising being $5,600, as shown by the bill, the Commissioners are without authority of law to charge the taxpayers with any sum whatever in excess of such cost, and such excessive charge invalidates their proceedings for sale. In so far as the

act of 1894 authorized a collection in excess of expenses, it is unconstitutional as directing a taking of private property for public purposes, without compensation.   The assessment must be limited to the cost of the project for which it is made.   Cooley on Taxation, p. 462 ; *Schenely* v. *Commonwealth,* 36 Pa. St. 29.

4.  Since the statute nowhere provides that this charge or any charge for advertising shall be a lien upon the land, it is beyond the power of the Commissioners to add it to the delinquent tax and to seek to sell the property therefor. The rule is settled that to constitute any charge a lien upon property, such lien must be specifically declared by the statute. *Heine* v. *Comm'rs,* 19 Wall. 655 ; *Lyon* v. *Alley,* 130 U. S. 177 ; *Johnson* v. *District of Columbia,* 6 Mackey, 21 ; 2 Dill. Munic. Corps., secs. 569, 818, 819 ; Burroughs on Taxation, 489 ; *Philadelphia* v. *Greble,* 38 Pa. St. 339.   If then for any of the reasons above given the levy contained an unlawful charge, the proceedings for sale were void.

A tax sale for anything more than is lawfully chargeable, is a sale without jurisdiction, and therefore void.   25 Am. and Eng. Ency. of Law, 389; *Smith* v. *Ryan,* 88 Ky. 636 ; *Lufkin* v. *City,* 73 Texas, 340 ; *Huse* v. *Merriam,* 2 Me. 376 ; *Glidden* v. *Chase,* 35 Me. 90 ; *Libbey* v. *Burnham,* 15 Mass. 144.   Where, included in the amount for which the land was sold, was *five cents* for a revenue stamp illegally required, the sale was void.     33 Wis. 445 ; see also *Baker* v. *Co.* 39 Wis. 447.     Printer's fees, wrongfully included in the charges, will invalidate the sale.   *Fox* v. *Cross,* 39 Kans. 350 ; *Genther* v. *Lewis,* 24 Kans. 226 ; *Jackson* v. *Challis,* 41 Kans. 226.

*Mr. S. T. Thomas,* Attorney for the District of Columbia, and *Mr. Andrew B. Duvall,* Assistant Attorney, for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. With respect to the question of the supposed illegal or excessive charge as costs for advertising the property for sale as authorized by act of Congress, it is provided by the act of March 19, 1890, "that if the taxes due, *together with the penalties and costs* that may have accrued thereon, shall not be paid prior to the day fixed for sale, the property will be sold under the direction of the said Commissioners at public auction at the office of the collector of taxes for the District of Columbia," &c., and that " the expenses of said advertising and the printing of said pamphlet shall be paid by a charge of twenty cents for each lot or piece of property advertised." It appears, however, that this charge of twenty cents for each lot advertised was not deemed sufficient by Congress; and by the District appropriation bill, approved August 7, 1894, we find this provision: " For advertising notice of taxes in arrears July 1, 1894, as required to be given by act of March 19, 1890, $12,000, to be *reimbursed by a charge of* $1.20 for each lot or piece of property advertised." This is the judgment of Congress as to what should be charged against each lot or piece of delinquent property advertised, and there is no dispensing power in the courts to make it less. If the Commissioners were able to have the work done for less than was allowed for it, as the plaintiff charges in his bill, it may possibly furnish ground for reimbursement for the excess, to the parties required to pay such excess; but that will rest alone in the discretion of Congress. The courts cannot go into an investigation of the matter, to determine how much has been or how much ought to have been paid for the work done. Congress has determined the amount that shall be charged against each lot or piece of delinquent property, and the courts have no control over it. At any rate, the charge of the $1.20 for advertising each lot or piece of property, as allowed by the statute, is no

ground for restraining the sale of the property, or for impeaching the validity of the sale after it is made.

2. Then, with respect to the penalties complained of, as being unauthorized, we perceive no ground whatever for the complaint. The fourth section of the act of March 3, 1877, which alone prescribes the penalties added, was left in full force and effect by the amendatory act of April 3, 1878, and when these two acts are read together, and giving to section 18 of the act of March 3, 1877, its full force and meaning, the meaning and intention of Congress is made plain, and would seem necessarily to import that the provisions of section 4 of the last mentioned act are extended and made to apply to each succeeding year ; so that such fourth section must be read as containing the words, after the words " seventy-seven" in the one clause, and " seventy-eight" in the other, *and before the same date in each succeeding year.* Without these words, or words of similar import, the fourth section would be left unrepealed, and yet without meaning or application. The eighteenth section of the act of 1877, of which act section 4 now in question is a part, is explicit in declaring " That this act," not part of it only, but the entire act, " shall remain in force as the tax law of the District of Columbia *for each subsequent year* after June thirtieth, eighteen hundred and seventy-eight, *until repealed.*" This latter section must be allowed its full force and meaning, and to give to it such full force and meaning would seem to leave no doubt upon the subject. That penalties were not intended to be omitted or stricken out of the law, is manifest from a provision in the act of June 11, 1878, providing a permanent form of government for the District of Columbia. That provision declares that " all proceedings in the assessing, equalizing, and levying of said taxes, the collection thereof, the listing, return, and *penalty for taxes in arrear,* the advertising for sale of property *for delinquent taxes,* the redemption thereof, the proceedings to enforce the lien upon unredeemed property, and every other act and thing now required to be done

in the premises, shall be done and performed *at the times and in the manner now provided by law*, except in so far as is otherwise provided by this act." To what penalties for taxes in arrear does this provision refer, if not to those imposed by the fourth section of the act of 1877—the only statutory provision prescribing penalties for delinquency in the payment of taxes? It is clear, we think, that, by a fair and reasonable construction of the provisions of these several statutes, to which we have referred, the statutory imposition of penalties for non-payment of taxes as they become due and in arrear, as prescribed by the fourth section of the act of March 3, 1877, read in connection with section 18 of that act, was not limited to the years 1877 and 1878, as contended by the plaintiff, but that section of the statute continues in force, and constitutes a part of the permanent tax system of this District.

Regarding, then, this fourth section of the statute as still in force, and applicable to the delinquent taxes here involved, it reads as follows :

" If one-half of the tax herein levied upon the real and personal property taxed by this act shall not be paid before the first of December, eighteen hundred and seventy-seven [and before that date in each succeeding year], said instalment shall thereupon be in arrears and delinquent, and there shall then be added *to be collected with such taxes*, a penalty of two *per centum*, upon the amount thereof, and a like penalty on the first day of each succeeding month *until payment of such instalment and penalty*. And if said instalment shall not be paid before the first day of June, eighteen hundred and seventy-eight [and before that date in each succeeding year], together with the one-half of the original tax, before said first day of June, *a like penalty shall be added on said last one-half of said tax ;* and the *whole together shall constitute the delinquent tax to be dealt with and collected in the manner prescribed in this act.*"

The mode of ascertaining the penalties and adding them to the taxes originally assessed, adopted by the Commis-

sioners, after the taxes became due and delinquent, is thus stated in the bill : " On December 1, 1893, and on the first day of each of the months of January, February, March, April and May, 1894, they added two *per centum* of one-half of said tax to the same, and on June 1, 1894, and on the first day of each month thereafter, they added two *per centum* of the whole of said tax thereto, and said Commissioners demand payment of said penalties, and $1.20 upon each parcel as costs of advertising, as a condition to their receiving payment of said taxes." This mode of ascertaining and adding the penalties is, in our opinion, in exact conformity with the provision of the statute. From the time that each instalment became due and delinquent, it became subject to the addition of the monthly penalties until payment is made of such instalment, together with the penalties added, and the costs allowed by the statute ; and the whole together are enforceable against, and constitute a lien upon, the property. This necessarily results, because it is declared that the *whole together shall constitute the delinquent tax* to be dealt with and collected in the manner prescribed by the act, and one of the modes of collection is by sale of the property. And as to the costs for advertising, that is included as an incident to the principal demand. *Provident Institution* v. *Jersey City*, 113 U. S. 515. There can be no question of the right to impose penalties for default in the payment of taxes ; and it is certainly competent to Congress not only to prescribe penalties, but to make them a lien upon and collectible by the sale of the property taxed. *De Treville* v. *Smalls*, 98 U. S. 517 ; *Provident Institution* v. *Jersey City*, 113 U. S. 506, 514, 515.

But, were the court below admitted to be in error as to the construction of the statutes to which we have referred, or if it were conceded that there were irregularities, or even illegalities in regard to the penalties and costs complained of, it would not by any means follow that a court of equity would restrain by injunction the proceeding to collect the tax with the penalties and costs added, and that the order appealed from should be reversed.

The accrual and addition of the penalties and costs have been superinduced and brought about solely by the act and default of the plaintiff. But for his default in allowing the taxes to become in arrear and delinquent, no penalties or costs would have been added, and, consequently, no pretence for an application to a court of equity for an injunction would have arisen. The government of this District is largely dependent upon the taxes allowed to be assessed for its ability to discharge its manifold municipal functions with punctuality ; and it is of the utmost importance, both to the municipal government and to the Federal government, under the peculiar system that prevails here, that the mode adopted for the speedy collection of the taxes assessed should be delayed or interrupted by the interference of the courts as little as possible. For, as said by the Supreme Court of the United States, any delay in the proceedings of the officers upon whom the duty is devolved of collecting the taxes, may damage the operations of government, and thereby cause serious detriment to the public. *Dows* v. *City of Chicago*, 11 Wall. 108, 110. Hence it was decided in the case just referred to, that a suit in equity will not lie to restrain the collection of a tax on the sole ground that the tax is illegal. But there must exist, and be made clearly to appear, additional special circumstances, bringing the case under some recognized head of equity jurisdiction, such as irreparable injury, multiplicity of suits, or cloud on the title of the complainant. These consequences must be made manifest to the court, and that they will ensue without the fault of the plaintiff. If he can avoid such consequences, the mere allegation of them will afford no ground for the interposition of a court of equity by injunction. " If," said the Supreme Court in the case just referred to, " the tax was illegal, the plaintiff protesting against its enforcement might have had his action, after it was paid, against the officer or the city to recover back the money, or he might have prosecuted either for his damages. No irreparable injury would have followed to him from its collection. Nor

would he have been compelled to resort to a multiplicity of suits to determine his rights.    His entire claim might have been embraced in a single action." 11 Wall. 112.    And so here, the plaintiff by paying the penalties and costs under protest, if they were really illegal, could have had ample remedy at law in a single action.

The same principle was clearly enunciated by the Supreme Court in the case of *Hannewinkle* v. *Georgetown*, 15 Wall. 547, a case taken up from the Supreme Court of this District.    And in the leading case of the *State Railroad Tax Cases*, 92 U. S. 575–6, where the whole subject is elaborately considered by the late Mr. Justice MILLER, as the organ of the court, the principle just stated is reaffirmed with emphasis, and it is there laid down that it is essential that every case brought in a court of equity to restrain the collection of taxes, shall be shown to be within some of the recognized rules of equity jurisdiction, and that neither illegality, or irregularity in the proceedings, nor error or excess in the valuation, nor the hardship or injustice of the law, provided it be constitutional, nor any grievance which can be remedied by a suit at law, either before or after the payment of the tax, will authorize an injunction against its collection.

This strict rule, as declared by the court, is founded on the principle that the levy of taxes is a legislative and not a judicial function, and the court can neither make nor cause to be made a new assessment if the one complained of be erroneous, and also in the necessity that the taxes without which the Government could not exist, should be regularly and promptly paid into its treasury.    And it was further held that no injunction, preliminary or final, can be granted to stay collection of taxes until it is shown that all the taxes conceded to be due, or which the court can see ought to be paid, or which can be shown to be due by affidavit, have been paid or tendered without demanding a receipt in full. " We are satisfied," says the court, " that an observance of this principle would prevent the larger part of the suits for

restraining the collection of taxes which now come into the courts. We lay it down with unanimity, as a rule to govern the courts of the United States in their action in such cases ;" citing Cooley on Tax. 537, and several other authorities. And the court further proceeded to say : " That there might be no misunderstanding of the universality of this principle, it was expressly enacted in 1867, that ' no suit for the purpose of restraining the assessment or collection of any tax shall be maintained *in any court.*' Rev. Stats., sec. 3224. And though this was intended to apply alone to taxes levied by the United States, it shows the sense of Congress of the evils to be feared if courts of justice could, *in any case,* interfere with the process of collecting the taxes on which the Government depends for its continued existence. It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment ; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice." The provision of the Rev. Stat., sec. 3224, referred to, applies with full force to this case, where the tax is assessed by the authority of the Congress of the United States, and is required, when collected, to be paid into the Treasury of the United States (act 1878, chap. 180, sec. 4), and the application to have its collection restrained is made to a court of the United States.

Upon every principle it is clear that the decree of the court below was right, and it must therefore be affirmed, and it is so ordered.

*Decree affirmed.*